BRITT et al., Appellants,

v.

FRANKLIN COUNTY COMMISSIONERS, Appellees.

[Cite as *Britt v. Franklin Cty. Commrs.*, 148 Ohio App.3d 395, 2002-Ohio-3679.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 01AP–1247.

Decided July 18, 2002.

James C. Britt, Jr., and Tom H. Nagel, pro se.

Ron O'Brien, Franklin County Prosecuting Attorney, George Speaks and Nick A. Soulas, Jr., Assistant Prosecuting Attorneys, for appellees.

KLINE, Judge.[1]

{¶ 1} James C. Britt, Jr., and Tom H. Nagel appeal from the Franklin County Court of Common Pleas' decision granting summary judgment in favor of the Franklin County Commissioners. Britt and Nagel assert that the trial court erred in finding that searches of persons entering county government offices are consensual and in granting summary judgment in favor of the commissioners with regard to the constitutionality of the searches. We agree in part because (1) the trial court erroneously construed the evidence in favor of the commissioners rather than in favor of Britt and Nagel, and (2) this court, upon construing the evidence in Britt and Nagel's favor, finds that a genuine issue of material fact exists as to whether the searches are consensual. Britt and Nagel also assert that the trial court erred in ruling, as a matter of law, that the commissioners possess statutory authority to implement the challenged security measures. Because R.C. 307.01(A) and 305.16 provide the commissioners with the authority to purchase such equipment and hire security personnel to operate it, we disagree.

{¶ 2} Accordingly, we affirm in part and reverse in part the judgment of the trial court, and we remand this cause for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

{¶ 3} Britt and Nagel, two attorneys with an interest in constitutional rights in relation to government searches, filed a declaratory judgment action in the trial court, challenging the security screening of persons entering the Franklin County Government Center and the Franklin County Child Support Enforcement Agency. Specifically, Britt and Nagel challenged the right of the commissioners to implement requirements that people and their belongings pass through metal detectors and x-ray machines before entering these buildings. Britt and Nagel argued first that the commissioners do not have the statutory authority to search people, and second that the search requirement is unconstitutional.

{¶ 4} The parties filed a joint stipulation of facts in which they agreed that "[a]ny person who refuses to consent to the search/screening procedures would be denied access to the government offices which would be accessible to those persons who consent."

---

1. Judges Kline, Abele, and Harsha of the Fourth Appellate District, sitting by assignment subsequent to the grant of plaintiffs-appellants' motion for recusal of the Tenth Appellate District judges.

{¶ 5} The trial court bifurcated the issues of commissioner authority and constitutionality. Both the commissioners and Britt and Nagel filed motions for summary judgment on the issue of commissioner authority. On those motions, the trial court found, as a matter of law, that the commissioners have explicit and implicit authority to implement the challenged security procedures. Thus, the court granted summary judgment in favor of the commissioners on the issue of commissioner authority.

{¶ 6} The commissioners then filed a motion for summary judgment on the constitutionality of the security screening. Britt and Nagel opposed the motion, asserting that genuine issues of material fact exist for trial. The trial court granted the commissioners' motion for summary judgment. In its decision, the trial court outlined the standard for summary judgment, noting that the court must construe all evidence in favor of the nonmoving party. In its application of the law, however, the trial court found that it "must construe the Civ.R. 56(C) evidence against the Plaintiffs [Britt and Nagel] in order to determine whether or not a genuine issue of material fact exists that must be preserved for trial." The court further found "that reasonable minds could only conclude that the consensual searches are not excessively intrusive and do not unreasonably burden the public entering the Courthouse."

{¶ 7} Britt and Nagel appeal the trial court's ruling, asserting the following assignments of error:

{¶ 8} "I. The trial court erred in finding that the searches of persons entering the county government offices instituted by the defendants are consensual.

{¶ 9} "II. The trial court erred in overruling the plaintiffs' motion for summary judgment and in finding that statutory authority exists for Ohio county commissioners to search people on their way into county government public offices.

{¶ 10} "III. The trial court erred in granting the county commissioners' motion for summary judgment and in finding that it is constitutional for Ohio county commissioners to require warrantless searches of all persons seeking to enter county government public offices."

## CONSTITUTIONALITY

{¶ 11} Britt and Nagel's first assignment of error pertains to the portion of the trial court's decision relating to the constitutionality of the security screening. Britt and Nagel contend that the trial court erred in resolving the factual question as to whether the searches are consensual in favor of the commissioners.

{¶ 12} Civ.R. 56(A) provides that summary judgment is appropriate only when the moving party establishes that (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881; *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 411, 599 N.E.2d 786. In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the opposing party's favor. *Doe v. First United Methodist Church* (1994), 68 Ohio St.3d 531, 535, 629 N.E.2d 402.

{¶ 13} In this case, the commissioners moved for summary judgment and Britt and Nagel opposed the motion. The trial court articulated the appropriate standard for summary judgment, as set forth above, in its decision. However, in applying that standard, the trial court construed the evidence in favor of the commissioners rather than in favor of Britt and Nagel. Specifically, the trial court stated, "the Court must construe the Civ.R. 56(C) evidence against the Plaintiffs in order to determine whether or not a genuine issue of material fact exists that must be preserved for trial." [2]

{¶ 14} The trial court went on to apply that standard by construing the evidence against Britt and Nagel. Specifically, the trial court found "that reasonable minds could only conclude that the *consensual* searches are not excessively intrusive and do not unreasonably burden the *public entering the Courthouse.*" (Emphasis added.) However, the parties had agreed in their joint stipulation of facts that "[a]ny person who refuses to consent to the search/screening procedures would be denied access to the government offices which would be accessible to those persons who consent." Given this factual stipulation, and construing the evidence in the light most favorable to Britt and Nagel, we find that reasonable minds could conclude that the searches in question are not consensual for the public entering the courthouse. [3]

{¶ 15} Thus, we find that the trial court erred in finding that the searches are consensual for the public entering the courthouse and that no genuine issue of material fact exists. Accordingly, we sustain Britt and Nagel's first assignment of error.

---

2. We cannot find that the trial court's use of the word "Plaintiffs" instead of "Defendants" here is merely a scrivener's error because, as discussed in ¶ 6 and 11, the trial court actually construed the facts in the light most favorable to the commissioners.

3. We note that the trial court did not find that the searches are consensual because the public may decline to enter the courthouse (a fact which Britt and Nagel seem to dispute) but, rather, found that the searches are consensual for the public entering the courthouse. Because the issue is not squarely before us, we decline to consider whether the searches may be deemed consensual because the public simply may decline to enter the building.

{¶ 16} Britt and Nagel's third assignment of error also pertains to the constitutionality of the security screenings. Specifically, Britt and Nagel contend that the trial court erred in finding that it is constitutional for the commissioners to require warrantless searches of all persons seeking to enter county government public offices. However, a review of the trial court's decision reveals that the trial court never made such a determination. Rather, the trial court determined (albeit erroneously) that reasonable persons could only conclude that the searches are consensual. Thus, the trial court has not yet reached the question of whether the commissioners could constitutionally require warrantless searches.

{¶ 17} Accordingly, we overrule Britt and Nagel's third assignment of error.

## COMMISSIONER AUTHORITY

{¶ 18} In their second assignment of error, Britt and Nagel assert that the trial court erred in granting the commissioners' motion and overruling their motion for summary judgment on the issue of whether the commissioners possess legal authority to implement the security screening procedures. Britt and Nagel's assignment of error presents a question of law, which calls for a de novo review. See *Hunt v. Marksman Prod., Div. of S/R Industries, Inc.* (1995), 101 Ohio App.3d 760, 762, 656 N.E.2d 726.

{¶ 19} A board of county commissioners possesses only such powers and duties as are expressly given by statute or as naturally and necessarily implied. *State ex rel. Winters v. Kratt* (1926), 19 Ohio App. 454, 456. The trial court found that R.C. 307.01(A) provides county commissioners explicit statutory authority to implement the security screening procedures.

{¶ 20} R.C. 307.01(A) states:

{¶ 21} "A courthouse, jail, public comfort station, offices for county officers and a county home shall be provided by the board of county commissioners when, in its judgment, any of them are needed. The buildings and offices shall be of such style, dimensions, and expense as the board determines. * * * The board shall also provide *equipment* * * * *as it considers reasonably necessary* for the proper and convenient conduct of county offices, and such facilities as will result in expeditious and economical administration of such offices * * *." (Emphasis added.)

{¶ 22} This statute "places a mandatory obligation on the board of county commissioners to provide equipment and facilities as it deems necessary for the proper and convenient conduct of county offices." *Campanella v. Cuyahoga Cty.* (1977), 57 Ohio Misc. 20, 23, 11 O.O.3d 189, 387 N.E.2d 254. R.C. 305.16 provides that a board of county commissioners may employ "such watchmen, janitors, and

other employees as are necessary for the care and custody of the court house, jail, and other county buildings."

{¶ 23} In this case, the commissioners accompanied their motion for summary judgment with an affidavit indicating that the commissioners consider the security screening procedures to be reasonably necessary for the proper conduct of government business. Thus, we find that R.C. 307.01(A) authorizes the commissioners to purchase the x-ray machines and magnetometers necessary for the security screenings. Additionally, we find that R.C. 305.16 authorizes the commissioners to hire the security guards who operate the equipment. Finally, we find that the authority to actually conduct the security screenings, i.e., to use the equipment, is inherent in the authority to purchase the equipment and hire guards to operate it.

{¶ 24} Therefore, we find that the trial court did not err in ruling, as a matter of law, that the commissioners possess statutory authority to implement the security screening procedures. Accordingly, we overrule Britt and Nagel's second assignment of error.

{¶ 25} In conclusion, we sustain Britt and Nagel's first assignment of error because the trial court did not properly apply the standard for weighing evidence on a motion for summary judgment. However, we overrule Britt and Nagel's third assignment of error because the trial court never actually made the ruling challenged. Additionally, we overrule Britt and Nagel's second assignment of error because we find that the commissioners possess the statutory authority to implement the security screening procedures as a matter of law.

{¶ 26} Accordingly, we reverse in part and affirm in part the judgment of the trial court, and we remand this cause for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part
and cause remanded.

PETER B. ABELE, J., concurs.

HARSHA, J., concurs in part and dissents in part.

ROGER L. KLINE, PETER B. ABELE, and WILLIAM H. HARSHA III, JJ., of the Fourth Appellate District, sitting by assignment.

HARSHA, Judge, concurring in part and dissenting in part.

{¶ 27} Initially, it appears that the court's use of the word "Plaintiffs" in the first sentence of its discussion is a scrivener's error. The court clearly set out the appropriate law, i.e., that it must construe the evidence against the moving

party, i.e., the defendants. It did so in the paragraph immediately preceding its discussion. Having properly set forth the law, the court must have inserted "Plaintiffs" when it meant to use "Defendants" in its analysis. If the court were going to ignore the law, it makes no sense to bring attention to that fact by stating the law in the immediately preceding paragraph.

{¶ 28} Moreover, the court's finding that the searches are consensual is erroneous, but amounts to harmless error. When an individual consents to a search, that person waives the protection of the Fourth Amendment's reasonableness requirement. Upon finding that a search is consensual, there is no need to conduct a reasonableness analysis because the individual has made a decision not to assert the protection of the Fourth Amendment. Consensual searches are conducted outside the framework of the Fourth Amendment. See Katz Ohio Arrest, Search and Seizure (2001 Ed.), Section 18.1.

{¶ 29} Clearly, the court's finding that these searches are consensual is wrong as a matter of law. The commissioners must establish by clear and convincing evidence that consent to a search is voluntary. *Bumper v. North Carolina* (1968), 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797. In my view, the government cannot restrict access to its offices and services upon the condition that the public waive its Fourth Amendment protection. The county commissioners have attempted to do so by adopting a policy that states that the public must consent to a search or be denied access to public buildings. Any "consent" that is obtained in that manner is coerced and not given freely or voluntarily as a matter of law.

{¶ 30} That conclusion should not end our analysis, however. The United States and Ohio Constitutions prohibit "unreasonable searches." See United States Constitution, Fourth Amendment and Section 14, Article I of the Ohio Constitution. The real issue posited by the defendant's motion for summary judgment is whether the searches implemented under the commissioners' policy are reasonable. The trial court went on to answer that question in spite of erroneously finding the searches to be consensual. Thus, its ruling on the consent issue is harmless error.

{¶ 31} I conclude that the trial court correctly found that searches conducted under the commissioners' policy are reasonable within the meaning of the Fourth Amendment. The question of whether a search is reasonable is determined by balancing the need for a search against the invasion of privacy that the search entails. See LaFave, Search and Seizure (3d Ed.), Section 10.7(a), citing *Camara v. Mun. Court of City & Cty. of San Francisco* (1967), 387 U.S. 523, 535, 87 S.Ct. 1727, 18 L.Ed.2d 930.

{¶ 32} In order to assess the threshold showing of need, courts may take judicial notice of tragedies and violent outbreaks across the country and their

consequent danger to the public at large, public property, and employees. *Downing v. Kunzig* (C.A.6, 1972), 454 F.2d 1230; *Davis v. United States* (D.C.App.1987), 532 A.2d 656; *Rhode Island Defense Attorneys Assn. v. Dodd* (R.I.1983), 463 A.2d 1370. In dealing with irrational and unpredictable acts, a showing of specific need is not realistic.

{¶ 33} In balancing this recognized need for public safety against individual privacy concerns, courts have focused upon the minimal scope of the searches, their nonaccusatory nature, and their lack of associated stigma in approving them. Likewise, the fact that the purpose of these searches is not to uncover criminal wrongdoing plays a role in their reasonableness. Finally, their uniform application to all individuals, as opposed to selective or discretionary enforcement, promotes their legitimacy. Where the risk to public safety is substantial and real, blanket suspicionless searches that are calibrated proportionately to the risks at hand are reasonable for Fourth Amendment purposes. See *Indianapolis v. Edmond* (2000), 531 U.S. 32, 47–48, 121 S.Ct. 447, 457, 148 L.Ed.2d 333 (no need for individualized suspicion in searches at governmental buildings where the need to ensure public safety is particularly acute and referring to "now routine" searches at airports and entrances to courts and other official buildings); and *Chandler v. Miller* (1997), 520 U.S. 305, 323, 117 S.Ct. 1295, 137 L.Ed.2d 513 (blanket searches may be reasonable at entrances to courts and other official businesses). "Area entry" searches are unfortunately becoming a necessary fact of life in today's unsettled world. Witness the approach that courts have given to such searches in the airport context. See, e.g., *United States v. Davis* (C.A.9, 1973), 482 F.2d 893.

{¶ 34} Here, the evidence indicates that the searches are "relatively brief," no longer than an elevator ride. They are nonselective, nonaccusatory, and minimally intrusive. There is no feasible way to limit the number of persons who are subjected to inspection, nor is there a lesser intrusion that will be successful in detecting weapons or explosives. Accordingly, I agree with the trial court that in balancing their need against their invasive impact, they are reasonable and pass constitutional muster.

{¶ 35} Therefore, I dissent from the majority's treatment of the appellant's first and third assignments of error. But I concur in judgment and opinion concerning the second assignment of error. Thus, I would affirm but remand for the sole purpose of correcting the court's scrivener's error.